UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MINNIE L. WARD,<br><br>            Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>            Defendant.<br>_____/ | No. C-05-2561 EMC<br><br>Related to<br><br>No. C-02-1728 EMC<br><br>**ORDER GRANTING IN PART AND REMANDING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket Nos. 14-15)** |

Claimant, Minnie L. Ward ("Ms. Ward") brings this action pursuant to the Social Security Act, 42 U.S.C. § 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied Ms. Ward's request for Supplemental Security Income ("SSI") disability benefits. Having considered the parties' motions and accompanying submissions, including but not limited to the administrative record, and good cause appearing therefor, the Court hereby **GRANTS IN PART** Ms. Ward's motion for summary judgment and **REMANDS** in part for further proceedings consistent with this order. The Commissioner's motion for summary judgment is **DENIED**.

## I.   PROCEDURAL BACKGROUND

Ms. Ward applied for SSI on December 29, 1998, alleging a disability relating to her left rib cage and shoulders that began on August 18, 1998. Transcript ("TR") 16, 103-04, 110-18. Her

application was initially denied and she requested a hearing before an ALJ. TR 71-80. On June 5, 2001, the ALJ found Ms. Ward was not disabled and the Appeals Council later affirmed the ALJ's decision. TR 16-21, 5-9. Ms. Ward sought judicial review of the ALJ's decision and on September 9, 2003, this Court granted her motion for summary judgment and remanded the case. TR 261-290.

In that previous order, this Court held that the ALJ failed to establish the proper standard for rejecting a treating physician's opinion and failed to fully develop the medical record regarding physician Dr. Hood's treatment period from May 1999 through December 1999. TR 261-290. The case was remanded to (1) further assess the weight to be given to the treating physicians' opinions, including Dr. Kadevari's opinion as well as Dr. Hood's, after obtaining a more complete medical record, and (2) further assess the credibility of Ms. Ward's testimony. TR 261-90.

On December 8, 2004, a hearing was held during which the ALJ instructed Ms. Ward to obtain Dr. Hood's medical records in accordance with the Court's order. TR 413. At the full hearing on February 2, 2005, Ms. Ward's attorney informed the ALJ that despite numerous attempts to contact Dr. Hood, he was unable to obtain the critical records and believed Dr. Hood had closed his medical practice due to his failing health. TR 438-440. Referencing this Court's previous order, the ALJ reiterated that "one of the major problems" in Ms. Ward's case was the insufficient medical records, but nevertheless, conducted and concluded the hearing with the available medical record. TR 437.

The process for determining disability is a five-step inquiry evaluating the evidence presented by a claimant. 20 C.F.R. § 416.920(a). First, the ALJ considers if the claimant is engaged in substantial gainful activity. If she is not engaged in such activity, the second inquiry is whether the claimant has a severe impairment. If the claimant has a severe impairment, the third inquiry is whether the condition meets those in the Listings of Impairments in Appendix 1 of the Regulations. If the claimant does not have such a condition, the fourth inquiry is whether the claimant is capable of performing her past relevant work. If the claimant is unable to perform her past relevant work, the fifth inquiry is whether the claimant is capable of performing other work that exists in substantial numbers in the national economy. *See* 20 C.F.R. § 416.920(b)-416.920(f)(1).

2

On March 16, 2005, the ALJ affirmed the prior ruling that Ms. Ward was not disabled. TR 260. Under step one, the ALJ found Ms. Ward did not perform substantial gainful activity since the onset of her disability. TR 253-254. Under step two, the ALJ found Ms. Ward suffered from a degenerative disc disease of the cervical spine and overuse syndrome of the right upper extremity, which were severe impairments. TR 254. However, under step three, the ALJ found that the medical findings were not equal in severity and duration to those in the Listing of Impairments. TR 254. Finally, under steps four and five, the ALJ found Ms. Ward could perform light work and her past relevant work as a food service worker. TR 254.

On November 21, 2005, Ms. Ward brought this action seeking review of the ALJ's decision pursuant to 42 U.S.C. § 1383(c)(3). *See* Mot. at 1. Ms. Ward argued that the ALJ (1) erred in failing to establish clear and convincing reasons for rejecting Dr. Kadevari's opinion, (2) erred in rejecting Dr. Kadevari's mental health assessment, and (3) erred in relying on the medical expert, Dr. Lewis,' testimony for vocational evidence when the medical expert did not provide such testimony. *See id.* at 5-9.

## II.  DISCUSSION

A.   Legal Standard

The district court reverses a decision of the Social Security Administration if it finds the decision was not supported by substantial evidence or was based on legal error. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The substantial evidence threshold requires "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039. If the evidence "can support either outcome, [a reviewing court] may not substitute [its] judgment for that of the ALJ." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001). A reviewing court should look at "the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." *Id*.

B.   Evidence of Disability

   1.   Claimant's Medical History

On August 18, 1998, Ms. Ward suffered spine-related injuries while operating a floor buffing machine at the school district where she was employed. TR 44.

Dr. Hood, an orthopedic surgeon, treated Ms. Ward from September 1998 to December 1999. On September 8, 1998, Dr. Hood diagnosed her with "overuse syndrome of the upper extremities." TR 160. Subsequently, Dr. Hood made several substantive findings regarding Ms. Ward's condition but two of the findings dated April 1999 and December 1999 were rejected by the ALJ due to lack of clinical support and inconsistencies with other evidence in the record.[1]  TR 256. Ms. Ward did not dispute the rejection of the April 1999 and December 1999 findings and, therefore, the Court does not address these records further.[2]

Significantly, what remains of Dr. Hood's substantive findings, in addition to the aforementioned September 1998 diagnosis, is a May 1999 Return to Work Order indicating that Ms. Ward may return to modified duty with no lifting over 20 pounds. TR 136. The Return to Work Order is otherwise brief and provides no further detail.

Dr. Kadevari, the other treating physician, diagnosed Ms. Ward with "chronic neck pain" and "mild degenerative disc disease" of the lower cervical spine on October 30, 2000. TR 199. His findings were in part based on Ms. Ward's statements regarding pain and in part based on a June 2000 MRI of her cervical spine that revealed mild chronic degenerative disc disease. TR 200. Dr. Kadevari's report also indicated mild to moderate pain in Ms. Ward's cervical spine that would be constant. TR 201. Dr. Kadevari found that in a normal work week, Ms. Ward could only sit for 2-3 hours, stand or walk for 2 hours, and occasionally lift 0 to 5 pounds. TR 201. She would be required to take unscheduled breaks every hour, rest one hour before returning to work, and be

---

[1] In December 1999, for instance, Dr. Hood found Ms. Ward could lift only 10 pounds, had significant limitations in her reach, and her pain was severe enough to interfere with attention and concentration. TR 181-184. Such findings would be classified as "sedentary work" based on 20 C.F.R. § 404.1567(a). Because Dr. Hood's authorized modified duty a few months prior, the ALJ rejected the December 1999 opinion as inconsistent with the record and unsupported by clinical findings. TR 256.

[2] This Court previously remanded so that Dr. Hood's April 1999 and December 1999 opinions could be reevaluated after obtaining a more complete medical record. However, as stated above, Ms. Ward was unable to obtain the critical records and therefore, the ALJ hearing proceeded with the available record. TR 438-440.

4

absent from work more than three times a month. TR 204-205. Ms. Ward would be largely, but not completely, precluded from grasping and twisting objects, using her fingers for manipulation, and using both arms for reaching. TR 202-03. She would be unable to push, pull, kneel, bend or stoop at a regular job. TR 205. Dr. Kadevari found that her symptoms would increase if placed in a competitive work environment and that her pain was constant enough to interfere with her attention and concentration. TR 204. Finally, Dr. Kadevari acknowledged that he was "able to completely relieve the pain with medication without unacceptable side effects." TR 201.

### 2. Medical Expert Testimony

Dr. Lewis was an orthopedic specialist called by the ALJ to testify about the nature of Ms. Ward's impairment given her testimony and medical records. TR 39-40. In reviewing her medical history, Dr. Lewis concluded that Ms. Ward did have a degenerative condition of the spine, which could account for the pain symptoms in her upper back and shoulders. TR 59. The expert also testified that Ms. Ward had symptoms in her neck, shoulders, and upper extremities, which could limit her activities. TR 59-60. He did not opine, however, as to her residual functional capacity.

## C. Treating Physician's Findings

### 1. Standard of Review for Rejecting Treating Physician

Ms. Ward argued that the ALJ erred in failing to establish the proper standard of review for rejecting Dr. Kadevari's October 2000 opinion. *See* Pl.'s Mot. at 7-8. The ALJ's opinion did not articulate the standard used for reviewing Dr. Kadevari's opinion, but established a standard for rejecting Dr. Hood's opinion. TR 256-257. However, the Commissioner argued in her motion that the ALJ did present "specific and legitimate reasons" for rejecting Dr. Kadevari's opinion. *See* Def.'s Opp. Mot. for Summ. J. at 3.

When a treating physician's opinion conflicts with that of another physician, the proper standard is that the opinion can be rejected with "specific, legitimate reasons...based on substantial evidence in the record." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). The more vigorous "clear and convincing" standard applies only when the physician's opinion is not controverted. *Connett*, 340 F.3d at 874.

It is to be noted that in this Court's previous order, this case was remanded because the ALJ failed to articulate the standard of review, whether that be the "clear and convincing" or the "specific and legitimate" standard. TR 282. However, in the ALJ's second opinion, the ALJ noted that selecting a standard was merely identifying a "distinction without a difference." TR 256. It is troubling that the ALJ is unable to discern a difference between the two standards, especially in light of the Ninth Circuit cases cited in the Court's previous order that explicitly distinguished the two standards. *See Andrews,* 53 F.3d at 1041 (a heightened "clear and convincing" standard applies when an uncontroverted treating or examining physician's opinion is rejected); *Connett*, 340 F.3d at 874 ("clear and convincing" standard does not apply when a treating physician's opinion is controverted, but "specific, legitimate" reasons must be provided). Despite the ALJ's failure to appreciate the difference in the two alternative legal standards, the ALJ noted that he rejected the treating physician's opinion under either standard of review. TR 256.

In the present case, Dr. Kadevari's opinion is contradicted by Dr. Hood's May 1999 Return to Work Order, which was credited by the ALJ. TR 256. Although the Return to Work Order is brief and conclusory in finding Ms. Ward capable of modified duty, TR 136, the Order conflicts with Dr. Kadevari's opinion that she can lift only 0 to 5 pounds and experiences constant mild to moderate pain. TR 199-201. In light of the vocational definitions of 20 C.F.R. § 404.1567, the two opinions are in conflict. Dr. Hood authorized "light work," defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," while Dr. Kadevari's limitations permit no more (perhaps less) than "sedentary work," defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles . . ."

Thus, the lower standard of deference applies. Indeed, the Court notes that no cases cited to the Court address the proper standard for rejecting a treating physician who is contradicted by another treating physician. Rather, the cases involve situations where the treating physician is contradicted by either an examining or non-examining physician, not a treating physician. *See Magallanes*, 881 F.2d at 751 (treating physicians' opinion contradicted by non-examining, non-treating physician); *Connett*, 340 F.3d at 874 (treating physician's opinion conflicted with an examining physician). It could be argued that even less deference is owed here. However, the

"specific and legitimate" standard has been held to apply generally. *See Holohan*, 246 F.3d at 1201 (if treating physician's findings are "inconsistent with substantial evidence in the record," opinion may be rejected with specific and legitimate reasons). Absent a ruling from the Ninth Circuit to the contrary, the "specific and legitimate" standard applies in this case since Dr. Kadevari's opinion is inconsistent with substantial evidence in the record. *See id.*

### 2. Specific and Legitimate Reasons

Ms. Ward argued that the ALJ erred in discrediting Dr. Kadevari's findings "without any citation to any specific piece of evidence." *See* Pl.'s Mot. at 8. The ALJ rejected Dr. Kadevari's opinion because it "[was]not supported by objective signs and findings, as reflected in his treating notes and elsewhere in the medical evidence of record." TR 257.

However, the ALJ cited in the opinion reasons for rejecting Dr. Kadevari's opinion which under some circumstances could have been deemed adequately specific and legitimate. While the ALJ did not list specific evidence in the paragraph addressing Dr. Kadevari's opinion, TR 257, in the preceding paragraphs, the ALJ listed numerous findings that contradict Dr. Kadevari's report. TR 255-257. Though the ALJ could have been more explicit in connecting those findings with his rejection, the ALJ stated that Dr. Kadevari's opinion was "not supported by objective signs and findings, as reflected in his treating notes and elsewhere in the medical evidence of record," thereby implicitly referencing the preceding findings mentioned in the ALJ opinion. Because Ms. Ward does not challenge the factual basis of the ALJ's findings, the Court accepts these findings as factually accurate.

First, the ALJ referenced x-rays taken in April 2000 that showed no abnormalities, including negative shoulder x-rays. TR 255 (referencing TR 196, 197). Second, the June 2000 MRI that Dr. Kadevari relied upon revealed only *mild* degenerative changes; moreover, no additional tests regarding her back or shoulder were requested. TR 255 (referencing TR 198). Third, although Dr. Kadevari noted limited range of motion in the spine and limited upper extremity strength, TR 199-201, "subsequent physical examinations performed...throughout 2001 did not reflect those findings and were essentially negative with the exception of one-time findings of trapezius hypertonicity and spasms noted in November 2001." TR 255 (referencing TR 318-327). The ALJ further observed the

lack of positive findings in 2002, including a March 2002 emergency room visit for pain medication refills where "no positive objective findings were reported." TR 255 (referencing TR 371). Additionally, throughout 2003, no positive findings were reported despite several emergency room and clinical visits. TR 256 (referencing TR 310, 362, 365). The Commissioner also noted Dr. Kadevari's finding that he was able to "completely relieve the pain with medication without unacceptable side effects," which as left without further explanation or qualification, tends to undermine his opinion that Ms. Ward's ongoing disability precluded her from work. *See* Opp'n at 3 (referencing TR 201).

Finally, discrepancies in Ms. Ward's own statements and actions undermined her credibility, including a February 2003 visit where the examining physician reported "embellishment" of symptoms and observed "normal ambulation, good range of motion in the spine and negative straight leg raising . . . ," TR 255 (referencing TR 311), and a June 2003 visit where Ms. Ward had a limp during the examination but normal ambulation was observed otherwise. TR 255 (referencing TR 316). The October 2000 opinion was based in part on Ms. Ward's subjective statements, statements which the ALJ did not fully credit.

These findings could have provided adequate specific and legitimate reasons for rejecting Dr. Kadevari's opinion. *See Magallanes*, 881 F.2d at 751. While it is true that the ALJ is required under Ninth Circuit law to explain how particular findings are contradictory, rather than merely listing objective factors seriatim, the basis of the ALJ's rejection here was not conclusory, nor was it inconsistent with substantial medical evidence as in *Embrey*. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). However, the Court does not reach the question whether the ALJ's rejection of Dr. Kadevari's opinion must be sustained because the ALJ committed a legal error in discrediting his assessment of Ms. Ward's mental health, an error which requires remand and reconsideration.

3.  Mental Health Assessment

Ms. Ward argues that the ALJ erred in discrediting Dr. Kadevari's opinion because he is "not a mental health practitioner who is qualified to assess the degree to which any mental condition might limit the claimant's ability to work." TR 257. The ALJ rejected Dr. Kadevari's opinion in part because he referenced emotional factors as a limit on Ms. Ward's work ability. TR 257.

8

A treating physician may provide testimony regarding a patient's mental state as it relates to his physical disability, even if that physician is not a psychiatrist. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (treating physician permitted to prescribe psychotherapeutic drugs for depression though he is not a licensed psychiatrist). In fact, a treating physician is well-suited to provide a mental health opinion given the "continuing relationship with the claimant [that] makes his especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations . . ." *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995). A physician's psychiatric opinion can be even more justified when physical limitations "from the claimant's physical impairments cannot be separated from the parts arising from his mental impairments." *Id.* at 833. Therefore, the treating physician's psychiatric assessment is not only valid, but provides a "unique perspective to the medical evidence." *Id.* (citing 20 C.F.R. § 404.1527(d)(2)).

That is the case here. Dr. Kadevari found that Ms. Ward's pain was severe enough to interfere with her attention and concentration constantly, and that emotional factors, such as anger, frustration, and sadness, contributed to and affected Ms. Ward's capabilities as well. TR 204. As her treating physician, Dr. Kadevari was qualified to provide a mental health assessment even though he is not a psychiatrist. *See Sprague*, 812 F.2d at 1232. Especially since Dr. Kadevari observed Ms. Ward for over nine months from April 2000 through January 2001, his unique opinion evaluating Ms. Ward over a lengthy period warrants fair consideration. *See Lester*, 81 F.3d at 833. Finally, her mental health assessment cannot readily be separated from her physical impairments since he found emotional factors of "anger, frustration, sadness" to contribute to the severity of her symptoms and limitations, as well as interfere with her concentration. TR 204. Although his observations are not detailed, from these findings alone, it appears the emotional factors are intertwined with the physical impairments.

The ALJ's outright rejection of this aspect of Dr. Kadevari's opinion conflicts with *Sprague* and *Lester,* and the Court therefore remands the case for further proceedings so that the ALJ may properly assess Dr. Kadevari's opinion, which as it relates to Ms. Ward's mental health should not have been summarily rejected.

9

D.     Medical Expert Testimony

Ms. Ward next argues that the ALJ erred in relying on Dr. Lewis' purported testimony to find that she can perform light work. *See* Pl.'s Mot. at 9. The ALJ stated that Dr. Lewis "testified based on the record as a whole that the claimant could perform work involving lifting of 25 pounds" and therefore, "consistent with Dr. Lewis' testimony and the extant record, that the claimant is able to perform light work . . ." TR 257.

As Ms. Ward correctly pointed out however, Dr. Lewis only summarized the medical record but did not testify about Ms. Ward's ability to perform work. *See* Pl.'s Mot. at 9. After summarizing the record, Dr. Lewis concluded that Ms. Ward had a degenerative spinal condition that could explain the pain symptoms in her back and shoulders. TR 59. While Dr. Lewis testified that Ms. Ward had symptoms in her neck, shoulder and upper extremities, he did not testify that she could "perform work involving 25 pounds" and in fact, did not testify regarding her work ability at all. TR 55-60. The ALJ thus erred in citing Dr. Lewis's testimony as evidence that Ms. Ward could perform light work. That testimony did not exist.

The Court notes this is not the first time the ALJ was informed of this error. Not only did the first June 5, 2001 ALJ decision include the same error regarding Dr. Lewis' testimony, but the Appeals Council noted the error in its subsequent review on March 11, 2002. TR 19, 7. After reviewing a tape of the hearing, TR 245, the Appeals Council stated that Dr. Lewis "did not mention any positive clinical findings to suggest that the claimant cannot perform light work. The medical expert did not provide an opinion with respect to the claimant's functional abilities." TR 8. It is troubling that the ALJ continues to cite the erroneous record.

### III.     CONCLUSION

Although the ALJ provided what could have constituted specific and legitimate reasons for rejecting Dr. Kadevari's October 2000 opinion, the ALJ failed to give due regard to governing legal principles in rejecting Dr. Kadevari's assessment and again committed a material error in referencing Dr. Lewis' supposed testimony as to Ms. Ward's ability to perform light work.

In reviewing the decision of the Commissioner, this Court has the power to "enter . . . as judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding

the cause for rehearing." 42 U.S.C. § 405(g). Therefore, the Court has the discretion to decide whether to remand a case for additional evidence or whether to award immediate benefits. *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). If an ALJ failed to make adequate findings and further proceedings could remedy those defects, the case should be remanded for reconsideration. *Lewin v. Shweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

Though the present case has proceeded for some time due to continuous errors, there are outstanding issues that must be resolved in order to either deny or grant benefits. First, it cannot be concluded whether the ALJ could and would reject Dr. Kadevari's opinion had the ALJ applied the proper legal standard in evaluating Dr. Kadevari's assessment. Second, the ALJ erred in relying on Dr. Lewis' testimony to find Ms. Ward capable of performing light work. The ALJ must reconsider step four and, if necessary, step five of the five-step inquiry.

For these reasons, the Court grants in part and remands in part for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: August 7, 2006

_____
EDWARD M. CHEN
United States Magistrate Judge